UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRUCE W.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02751-MJD-SEB |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Bruce W. applied for disability insurance benefits ("DIB") and/or supplemental security income ("SSI") from the Social Security Administration ("SSA") on December 15, 2014, alleging an onset date of October 31, 2014.  [Filing No. 9-2 at 13.]  His applications were initially denied on April 30, 2015, [Filing No. 9-4 at 4; Filing No. 9-4 at 13], and upon reconsideration on July 9, 2015, [Filing No. 9-4 at 25; Filing No. 9-4 at 32].  Administrative Law Judge Shelette Veal (the "ALJ") conducted a hearing on April 25, 2017.  [Filing No. 9-2 at 53-72.]  The ALJ issued a decision on August 15, 2017, concluding that Bruce W. was not entitled to receive DIB or SSI. [Filing No. 9-2 at 10.]  The Appeals Council denied review on July 9, 2018.  [Filing No. 9-2 at 2.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

On September 6, 2018, Bruce W. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c).  [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).  "The statutory definition of 'disability' has two parts.  First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity.  Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.  The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can

perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[2] "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

---

[2] The Code of Federal Regulations contains separate, parallel sections for DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

## II.
### BACKGROUND

Bruce W. was 42 years of age at the time he alleged his disability began.  [Filing No. 9-6 at 2.]  He has completed the tenth grade and previously worked as a housekeeper for a department store, janitor for a school, and watchman for a foundry.  [Filing No. 9-7 at 7.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Bruce W. was not disabled.  [Filing No. 9-2 at 24.]  Specifically, the ALJ found as follows:

- At Step One, Bruce W. had not engaged in substantial gainful activity[4] since October 31, 2014, the alleged onset date.  [Filing No. 9-2 at 16.]

- At Step Two, he had "the following severe impairments: peripheral neuropathy, anxiety, and personality disorder."  [Filing No. 9-2 at 16 (citations omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Filing No. 9-2 at 16.]

- After Step Three but before Step Four, Bruce W. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally lift ten pounds.  He can stand or walk for two hours and sit for six hours per eight-hour workday. He can occasionally push or pull with his lower right extremity.  He can occasionally climb ramps, stairs, ladders, ropes, or scaffolds.  He can frequently balance on level surfaces, stoop, kneel, crouch, or crawl.  He can occasionally tolerate exposure to unprotected moving mechanical parts and unprotected heights.  He can tolerate occasional contact with coworkers, supervisors, and the public."  [Filing No. 9-2 at 18.]

- At Step Four, relying on the testimony of the vocational expert ("VE") considering Bruce W.'s RFC, he was incapable of performing any of his past relevant work as a gate guard, janitor, and industrial cleaner.  [Filing No. 9-2 at 22.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

- At Step Five, relying on VE testimony considering Bruce W.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision in representative occupations, including as an addresser, mail sorter, and eyeglass frame polisher. [Filing No. 9-2 at 23-24.]

## III.
### DISCUSSION

Bruce W. raises three assertions of error that the ALJ: (1) did not find Bruce W.'s carpal tunnel syndrome to be a severe impairment and ignored all evidence related to the impairment, (2) improperly gave little weight to a treating source opinion, and (3) failed to address the cumulative effect of all of Bruce W.'s impairments, including his obesity. The Court will address the issues in turn.

### A. Carpal Tunnel Syndrome

The Court is not persuaded that the ALJ didn't find carpal tunnel syndrome to be a severe impairment. As noted above, the ALJ found Bruce W.'s severe impairments to include peripheral neuropathy. Neither party recognizes that peripheral neuropathy is a general diagnostic term that includes carpal tunnel syndrome. "Peripheral neuropathy can affect one nerve (mononeuropathy), two or more nerves in different areas (multiple mononeuropathy) or many nerves (polyneuropathy). Carpal tunnel syndrome is an example of mononeuropathy." Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 (last visited June 11, 2019). The written decision indicates that the ALJ was aware that peripheral neuropathy may, as here, involve both upper and lower extremities. For example, in a paragraph discussing Bruce W.'s "alleged peripheral neuropathy," the ALJ noted that Bruce W. "had an EMG that showed bilateral moderate to severe median neuropathy at the wrist (carpal tunnel syndrome), right ulnar neuropathy at the elbow, and right lower extremity demyelinating neuropathy." [Filing No. 9-2 at 19.]

Regardless of whether the ALJ found carpal tunnel syndrome to be a severe impairment at Step Two, the Court does not find that the ALJ ignored the evidence related to the impairment at the subsequent steps of the sequential evaluation process.[5] "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (citing 20 C.F.R. § 404.1523; *see Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe.")). "Therefore, the step two determination of severity is 'merely a threshold requirement.'" *Castile*, 617 F.3d at 927 (quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir. 1999)). As noted above, the ALJ acknowledged the diagnostic testing establishing the medically determinable impairment. The ALJ summarized the evidence relevant to the functionality of Bruce W.'s upper extremities, including the findings of a consultative examination performed on March 2, 2015, by Ami Rice, M.D. [Filing No. 9-2 at 19.] The ALJ noted that the consultative report indicated the following about Bruce W.:

> He had 5/5 strength in all evaluated proximal muscle groups. He also had 5/5 grip strength with good manual dexterity. There was no muscle atrophy or spasm. His reflexes, motor and sensory systems, and coordination were all normal. Dr. Rice noted he was able to perform normal movements like walking, sitting, squatting, bending, hand movements, manipulative movements with hands and feet, and grasp[ing] objects. Dr. Rice noted no significant functional limitations (Exhibit 6F).

---

[5] To the extent that Bruce W.'s issue heading in his brief also refers to degenerative disc disease, [Filing No. 11 at 17], the Court notes that Bruce W. does not provide any argument related to that potential impairment. An argument that is "perfunctory and undeveloped," may be treated as waived. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018), *reh'g denied* (Dec. 18, 2018) (quoting *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)).

[Filing No. 9-2 at 19 (citing Filing No. 9-12 at 46).] The ALJ also noted that a treating examination in May 2015 continued to show full upper extremity strength and normal sensation in all extremities, except decreased sensation over Bruce W.'s left shoulder. [Filing No. 9-2 at 19-20.]

The ALJ discussed the relevant treatment that Bruce W. had received for his carpal tunnel syndrome, including his response to that treatment. "In December 2016, he underwent right carpal tunnel release surgery and did well postoperatively with good resolution of numbness and tingling (Exhibit 14F at 22-40)." [Filing No. 9-2 at 20 (citing Filing No. 9-14 at 23 (A postoperative note two weeks after the surgery described that Bruce W. had "good resolution of numbness and tingling, feeling much better than he did preoperatively.").] Generally, a "remediable condition" is not a basis for an award of benefits. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004), *on reh'g*, 368 F.3d 691 (7th Cir. 2004). The treating provider noted that he would see Bruce W. "back as needed," but there were no follow-up visits in the record documenting ongoing or recurrent problems. See [Filing No. 9-2 at 23.]

The only evidence that Bruce W. had ongoing symptoms related to his carpal tunnel syndrome after the surgery was his testimony during the hearing. "I have pain in this right hand still and they just operated on the left hand, I think December of 2016 and it's still right now[,] I still have numbness in my fingers. It hasn't gotten any better." [Filing No. 9-2 at 60.] The ALJ noted that Bruce W. alleged hand pain, despite evidence of improvement with surgery. [Filing No. 9-2 at 21.] The ALJ "generally [found] the claimant's descriptions of the location, duration, frequency, and intensity of his symptoms unpersuasive as they are generally unfounded elsewhere in the record." [Filing No. 9-2 at 21.] Bruce W. does not develop any challenge to the ALJ's subjective symptom evaluation, including confrontation with the relevant standard of review for that determination. *See supra* note 5 (undeveloped arguments are waived). Instead, Bruce W.

maintains that the ALJ ignored the relevant evidence, including Bruce W.'s testimony. [Filing No. 11 at 19.] Because the ALJ analyzed the evidence related to Bruce W.'s carpal tunnel syndrome throughout the sequential evaluation process, including the objective evidence, subjective symptoms, treatment, and response to treatment, the Court does not find any error at Step Two or beyond based on a failure to consider the impairment.

Furthermore, Bruce W.'s testimony describing his ongoing symptoms and functional limitations related to his carpal tunnel syndrome is consistent with the ALJ's RFC finding. When asked what prevented from him working at the hearing, Bruce W. testified:

> I have numbness in my hands so I'm not able to lift a lot. Also in my legs and in my feet I have severe pain especially when I'm standing or trying to do a lot of walking, just numbness in my back which makes it hard for me to lift.

[Filing No. 9-2 at 55.][6] When asked how much he could lift, he testified that "[i]f it's milk or something like that I still have the numbness in my hands so it seems to be anything I lift that's 10 or 20 pounds that causes pain and numbness." [Filing No. 9-2 at 64.] The ALJ found that Bruce W. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally lift ten pounds." [Filing No. 9-2 at 18; see 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.").]

Bruce W. has not developed any argument—with citation to the record—that he had additional limitations because of his carpal tunnel syndrome that would be material to an

---

[6] The ALJ's RFC also significantly limited the amount of time that Bruce W. could stand or walk, totaling two hours in an eight-hour workday. [Filing No. 9-2 at 18.] On March 2, 2015, Bruce W. reported to the consultative examiner that he could walk one block without assistance and stand one hour at a time. [Filing No. 9-12 at 45.]

evaluation of his ability to perform work. Accordingly, the Court does not find any error based on the ALJ's treatment of Bruce W.'s carpal tunnel syndrome.

## B. Treating Opinion

Bruce W. contends that the ALJ failed to properly consider the opinion of his treating physician, Sheri-Lyn Makombe, M.D. [Filing No. 11 at 24.] Specifically, Bruce W. asserts that the ALJ gave Dr. Makombe's opinion little weight using reasoning that was "erroneous and unreliable," [Filing No. 11 at 24], failed to recognize the deference afforded treating opinions, [Filing No 11 at 25-26], and did not explicitly consider the factors used to evaluate medical source statements, [Filing No. 11 at 26-27.]

Based on the filing date of Bruce W.'s applications, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies only to claims filed before March 27, 2017). In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott*, 647 F.3d at 739 (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Scott*, 647 F.3d at 740 (citing *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's

specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 404.1527(c). However, so long as the ALJ "minimally articulates" her reasoning for discounting a treating source opinion, the Court must uphold the determination. *See Elder v. Astrue,* 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming the denial of benefits where the ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527).

The ALJ discussed the mental impairment questionnaire that was completed on March 29, 2017 by Bruce W.'s "primary care physician," Dr. Makombe. [Filing No. 9-2 at 22.] Dr. Makombe opined that Bruce W. was seriously limited, but not precluded with his ability to: (1) work in coordination with or proximity to others without being unduly distracted, (2) respond appropriately to changes in a routine work setting, and (3) deal with normal work stress. [Filing No. 9-13 at 49.] Dr. Makombe opined that Bruce W. was unable to meet competitive standards with his ability to: (1) interact appropriately with the general public and (2) travel in an unfamiliar place. [Filing No. 9-13 at 50.] Dr. Makombe also opined that Bruce W. would be absent from work on average more than four days per month because of his impairments and treatment. [Filing No. 9-13 at 52.]

With one exception detailed below, the Court finds that the ALJ gave good reasons for not giving more weight to the assessments of Dr. Makombe. The regulations instruct the ALJ to consider "consistency" with "the record as whole" when determining the weight that should be given a medical opinion. 20 C.F.R § 404.1527(c)(4). The regulations also instruct the ALJ to consider the "supportability" of a medical opinion, which refers to the relevant evidence presented by the source to support the opinion, including "particularly medical signs and laboratory findings." 20 C.F.R. § 404.1527(c)(3). However, the regulations specify that the supportability

factor is more relevant to weighing opinions from "nonexamining sources." *Id.* Presumably, the

relative distinction is appropriate because treating or examining opinions can be compared for

consistency with their corresponding treating notes or examination findings. *See Schaaf v. Astrue,*

*602 F.3d 869, 875 (7th Cir. 2010)* (A treating source statement can be discounted if not properly

explained and the treating notes do not provide any further clarification or support with objective

signs). The ALJ explained:

> This opinion is given little weight as it is inconsistent with the claimant's former
> employer's report that he was able to deal with all of these things with little to no
> problems (Exhibit 7E). Further, there is no support for a marked limitation in social
> functioning as he was always described as cooperative, he was able to hold a job
> for many years, and his symptoms improved with medication to allow him to attend
> church regularly, drive later in the day with more traffic, and enjoy life more.

[Filing No. 9-2 at 22.]

Dr. Makombe's mental assessment was inconsistent with Bruce W.'s former employer's

report about his functional abilities in a work setting. The demonstrated ability to work with an

impairment or impairments—absent evidence showing the impairments have worsened—is

substantial evidence supporting an ALJ's conclusion that "long-standing complaints" did not

render the claimant disabled. *Castile v. Astrue*, 617 F.3d 923, 927-28 (7th Cir. 2010). The former

employer's report indicated that Bruce W. had the ability to perform the basic mental demands of

unskilled work.[7] *See* Social Security Ruling ("SSR") 85-15 (S.S.A. 1985), 1985 WL 56857, at *4

("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on

a sustained basis) to understand, carry out, and remember simple instructions; to respond

appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a

routine work setting."). The employer reported that Bruce W. had worked full-time for over eight

---

[7] The representative occupations that ALJ found Bruce W. capable of performing at Step Five were
all unskilled occupations. [Filing No. 9-2 at 23-24.]

years and was very rarely absent or tardy, with an excellent attendance record and did a "great job maintaining a work routine." [Filing No. 9-7 at 36.] The employer reported that Bruce W. had a fine ability to understand and carry-out simple instructions and was "very thorough and detailed" with no issues completing assigned work as requested. [Filing No. 9-7 at 37.] The employer reported that Bruce W. did not have an issue getting along with supervisors and co-workers and was "very pleasant and cooperative," and "accommodating if there were changes" in the work setting. [Filing No. 9-7 at 37.]

Bruce W. contends that the ALJ's use of the former employer's report is erroneous, because the "ALJ does not allow for the consideration that [Bruce W.'s] impairments, including his anxiety, progressively worsened over time and that despite brief improvement with medication, he was unable to tolerate the negative side effects of that medication and his anxiety returned." [Filing No. 11 at 24.] However, Bruce W. does not present any evidence to support that his anxiety has worsened since he was last employed.

To the contrary, the record supports that Bruce W.'s issues with anxiety were long-standing. For example, he reported to the psychological consultative examiner, "I've always had problems with anxiety I guess. I'm also having some health issues that just seem to be getting worse, [which] makes it hard to do things." [Filing No. 9-12 at 48.] The consultative examiner detailed Bruce W.'s history of long-standing anxiety problems, which were present during his period of employment:

> He reported that he has experienced anxiety most of his life and that he was treated for the anxiety when he was in his 20's through Mid-Town Mental Health. He reported difficulties being around people. He reported that he quit school after the tenth grade due to how high his anxiety became being at school and having a severe fear of being around people and being embarrassed. He also reported having some depression when he was younger. He reported that he has had panic attacks in the past. He reported that he has a fear of most social situations and begins having difficulty if there are more than two or three people present. He reported that he

will go to the store or the laundromat but will go at times when he knows there are usually few people there. He reported that when he was working at the foundry he would hide when he first arrived because there were still workers present before the shift change. He reported that he worked as a night watchman when no one or very few people would be there. He reported a difficult time going to restaurants because of having to interact with the waitress and becoming nervous over ordering or paying the bill. He reported an instance when he was out at a restaurant and became so nervous he had to leave before paying his bill.

He reported that he still lives with his mother and father. He reported that he did try to live on his own at one time but was unable to keep up with his bills and having to interact with people on the phone for example to take care of day to day things in life.

[Filing No. 9-12 at 49.] Based on the evidence that Bruce W.'s anxiety has been a life-long issue, the ALJ's use of the former employer's report that Bruce W. performed satisfactorily or even excelled with the basic mental demands of unskilled work was substantial evidence to support the ALJ's rejection of the contrary aspects of Dr. Makombe's opinion.

However, the Court does not find that the ALJ provided any good reason to reject Dr. Makombe's assessment that Bruce W. would be unable to interact appropriately with the general public. The employer's report indicated that Bruce W. worked the night shift and did not have any interaction with even co-workers, let alone the public. [Filing No. 9-7 at 36.] The history detailed above consistently described significant issues dealing with crowds, even small groups of people, and any kind of focused interaction, including over the phone. The ALJ did cite evidence that in May 2015, Bruce W. had reported improvement with medication, such that "he said he felt great with no side effects, less anxiety, and less panic in public. He also said he joined a new church and was able to sit near the front, drive later in the day with more traffic, and enjoy life more." [Filing No. 9-2 at 20 (citing Filing No. 9-12 at 59).] Bruce W.'s reported activities and symptoms appear consistent with an ability to at least make it to work, but do not provide much for support for the idea that he could appropriately interact with the public in any substantial way.

Furthermore, the ALJ noted that the last treatment record revealed that a month after reporting improvement, Bruce W. discontinued one of his anxiety medications because of a side effect and he reported his anxiety returned. [Filing No. 9-2 at 20 (citing Filing No. 9-12 at 51).]

The ALJ's RFC finding is not completely consistent with Dr. Makombe's assessment that Bruce W. would not be able to interact appropriately with the public. As noted above, the ALJ found that Bruce W. could have occasional contact with the public. There may be a difference between contact and interaction in a vocational context. Although the terms are not clearly defined here. The terms are sometimes used interchangeably in the social security disability context. *See, e.g., Lane v. Colvin*, 643 F. App'x 766, 768–70 (10th Cir. 2016). Notably, the ALJ's RFC does not specifically limit interaction with the public, regardless of whether a limitation to occasional contact would necessarily limit interaction to an occasional basis as well.

However, to whatever extent the ALJ's RFC finding was inconsistent with the relevant limitation opined by Dr. Makombe—a limitation that was not contradicted by substantial evidence in the record—the Court finds the error harmless. The Seventh Circuit has explained the standard by which error can be ignored by the Court:

> But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010). That would be a waste of time and resources for both the Commissioner and the claimant. Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be. We note (yet again, see *Spiva,* 628 F.3d at 353 and the critical discussion therein) that the harmless error standard is not, as the Commissioner and district court seem to believe, an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation. We have already concluded that the ALJ erred. The question before us is now prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective.

*McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Bruce W. was asked at the hearing if his current anxiety medication helped and he testified that when in public, "I still have trouble talking

to people." [Filing No. 9-2 at 62.] For each representative occupation that the ALJ found Bruce W. capable of performing, the Dictionary of Occupational titles lists the essential job requirements and specifies that: (1) "talking" is an activity or condition that is "not present" and (2) taking instructions and helping is "not significant." *See* DICOT 209.587-010 (G.P.O.), 1991 WL 671797 ("Addresser"); DICOT 239.687-014 (G.P.O.), 1991 WL 672235 ("Tube Operator" or mail sorter); DICOT 713.684-038 (G.P.O.), 1991 WL 679267 ("Polisher, Eyeglass Frames"). The Court does not find harmful error necessitating remand for the limited portion of Dr. Makombe's opinion that would be deserving of controlling weight. The jobs that the ALJ found Bruce W. capable of performing do not require interaction with the public greater than Bruce W.'s ongoing symptoms would allow.

As explained above, the Court finds good reasons supplied by the ALJ for giving limited weight to the remainder of Dr. Makombe's assessments. Accordingly, the Court does not find any basis necessitating remand concerning Dr. Makombe's opinion.

## C. Obesity and Combined Impairments

Bruce W. contends that the ALJ failed to follow SSR 02-1p, which specifies that a claimant's obesity should be considered along with the claimant's other impairments at Step Three and beyond when the ALJ assesses the claimant's RFC. [Filing No. 11 at 28-30.] Furthermore, Bruce W. asserts generally that the ALJ failed to consider Bruce W.'s severe and non-severe impairments together when assessing his ability to work. [Filing No. 11 at 30-31.]

The Court agrees with Bruce W. that the ALJ's written decision does not demonstrate that the ALJ considered Bruce W.'s obesity beyond Step Two. The ALJ did explain in contrast to Bruce W.'s severe impairments, hypertension and obesity were "medically determinable impairments, [but] they result in minimal, if any, limitation in his ability to perform work-related

activities when properly treated and maintained." [Filing No. 9-2 at 16.] However, as stated above, the ALJ must continue to consider the combined effects of both severe and non-severe impairments throughout the sequential evaluation process. There is no explicit evidence in the written decision that the ALJ considered all the impairments—particularly Bruce W.'s obesity— at the remaining steps beyond Step Two other than boilerplate language stating that all the impairments were considered. [Filing No. 9-2 at 18.]

However, the Court does not find harmful error. Bruce W. relies on *Barrett* for the proposition that remand is necessitated by the ALJ's failure to consider the combined effects of Bruce W.'s "medical situations as a whole," including his obesity. 355 F.3d at 1068. The Court believes the Seventh Circuit precedent is distinguishable. The ALJ in *Barrett* specifically found that the claimant's obesity aggravated her arthritis, but the ALJ appeared to discount the claimant's arthritis on that basis. *Id.* The Circuit found the ALJ's conclusion to be contrary to law and logic. *See id.* Furthermore, the Circuit was mystified by the ALJ's unsupported RFC determination, "in particular (this is the third serious flaw in [the ALJ's] analysis) we do not know on what basis he decided that Barrett can stand for two hours at a time. No physician said that." *Id.* Here, the ALJ's written decision does not expressly address the combined effect of Bruce W.'s impairments, including obesity. However, unlike *Barrett*—which did address the combined effect—there is no analysis in the instant case that is contrary to law and logic, nor a combination of analytic errors that includes an RFC limitation that is not supported by substantial evidence.

The Court finds the dearth of analysis harmless according to the rationale of the Seventh Circuit's later precedent in *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004), which also dealt with an error of articulation concerning the claimant's obesity under the SSA's applicable

ruling. However, unlike the instant case, the ALJ in *Skarbek* entirely omitted any discussion of the claimant's obesity. Still, the Circuit excused the error, explaining:

> Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk. Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.

*Id.* Bruce W. does not present any evidence specifically showing that his obesity combined with his other impairments to reduce his RFC to a greater degree than the limitations that the ALJ found were supported by the record. Rather, Bruce W. merely states that obesity may affect a claimant's RFC in a variety of ways. [*See* Filing No. 11 at 28.]

Furthermore, the ALJ gave "some weight" to the assessments of the state agency consultants and the consultative examiners. [Filing No. 9-2 at 21-22.] The consultant reviewers both noted the results of the consultative examination performed by Dr. Rice, which revealed a body mass index of 38.5 and limited range of motion in Bruce W.'s lower extremities specifically because of obesity. [Filing No. 9-3 at 23; Filing No. 9-3 at 53 (citing Filing No. 9-12 at 46 (Dr. Rice noted "[t]here is limited range of motion in lower extremities with obesity)).] Taking those findings into account, the consultant reviewers assessed Bruce W. to have limitations consistent with light work and a limited ability to operate foot controls with the right lower extremity. [Filing No. 9-2 at 21-22; Filing No. 9-2 at 51-52.] As detailed above, Bruce W. reported to Dr. Rice that he could stand for an hour at a time and despite the limited range of motion in Bruce W.'s lower extremities, Dr. Rice opined that Bruce W. did not have any significant functional limitations. The ALJ's RFC finding included all the limitations assessed by the medical experts and went further by limiting Bruce W. to a range of sedentary work. "More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ." *Rice v.*

*Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). Accordingly, the Court find the ALJ's error of articulation harmless. Bruce W. has not met his burden to establish that he was harmed by the omission. The ALJ's RFC assessment is supported, in part, by the less restrictive assessments of the combined medical experts and is not contradicted by any medical opinion as to Bruce W.'s physical limitations. The Court affirms the ALJ's physical RFC finding.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Bruce W. to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

SO ORDERED.

Dated: 20 JUN 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com